## CATHERINE BRIGEL v. LEO A. BRIGEL ET AL.

1. A party having inconsistent remedies, created by law or contract, for the enforcement of a right, must elect which one he will pursue; and after having made his election, and by words or acts expressed it in a manner suited to the particular case, he can not reverse it; having elected to pursue one remedy, he waives the others. Equity follows the law in this respect.

2. The payee of three notes secured by the same collateral, two of which are signed by the maker alone, and the third with his wife as surety, will be held to have elected to have the collateral applied toward the payment of the third note, so far as the surety is concerned, by commencing foreclosure proceedings thereon against the maker and surety; in which he asks that the collateral be sold and applied toward the payment of such note; and he can not thereafter, to the prejudice of the surety, have the collateral subjected to the payment of the other two notes, although they matured earlier than the third.

3. The holder of a promissory note, between whom and the principal debtor the consideration passed, is presumed to know that a third party, who signed as surety, was in fact a surety.

### SUPPLEMENTAL.

4. The mere passive delay of the holder of a note to enforce its payment against the principal will not release the surety; but, if the holder, after having taken the property of the principal debtor into his control by legal process, or otherwise, with respect to the debt, voluntarily releases it, he thereby discharges the surety to the extent of the value of such property. The surety's right of release, in such case, does not depend upon contract with the holder, but upon the theory that it is inequitable for the latter to knowingly prejudice the rights of the surety against the principal.

HOSEA, J.; FERRIS and HOFFHEIMER, JJ., concur.

Error to special term.

In this case three notes, two of them at one and two years respectively by Leo Brigel, individually, and the third at three years by Leo Brigel and his wife, Catherine M. Brigel—the wife being certified here as surety—were signed

and delivered on the same day to Jerome D. Creed, each note being secured by the same collateral, viz.: seven hundred and thirty-five and one-fourth shares of the capital stock of the Jackson Brewing Company.

The notes remained in the hands of Creed, but after maturity of all the notes, on March 17, 1893, he brought two suits against Brigel and his wife upon the last mentioned note—one in foreclosure to subject the security, and one to obtain a personal judgment.

Both suits were prosecuted to final judgment and a decree was taken in the foreclosure suit finding the amount due and ordering sale of the stock and payment therefrom of the decree and costs unless paid within ten days by the parties. On error proceedings the decree in the first suit was affirmed and judgment in the second suit was reversed and petition dismissed by the Supreme Court. The stock in question was subsequently sold in a different proceeding under judgment obtained by E. W. Kittredge against Leo Brigel, and the proceeds of said sale are in the hands of a receiver of this court in case No. 48357. The contention of the plaintiff here is that the proceeds of the sale should be applied in the first instance to the payment of the judgment recovered on the note on which she is surety; while Creed claims the right to apply the proceeds to the individual notes of Brigel above mentioned which matured earlier; and the court below sustained the latter contention.

Had Creed sued upon the individual notes of Brigel in the first instance and attempted to subject the stock to the exclusion of the surety, the plea of his right of election might have raised a contest of a different nature and necessitated a close inquiry into the actual facts and circumstances relating to the execution of the notes and the understanding of the parties as affecting the rights of the surety, which inquiry, however, is not necessary here. We think the case as presented may be shortly disposed of under well-established rules.

Granting, for the purposes of this case, that Creed, the payee of the notes, had in the first instance the right to apply the common collateral to the payment of the notes in

their order of maturity or otherwise, as he should see fit, yet as to Catherine Brigel it was a right of election governed by legal rules.

It is an ancient maxim of the law that when an election is once made and pleaded the party making it is concluded —*electio semel facta et placitum testatum non patitur regressum* '(Co. Litt., 146*a*).

As expressed by Lord Campbell in *Brown* v. *Insurance Co.,* 1 Ell. & Ell., 835:

"Where a contract provides for an election the party making the election is in the same position as if he had originally contracted to do the thing which he elected to do."

Blackburn, J., in *Ward* v. *Day,* 4 Best & Sm., 356, refers to it as "a rule which is a branch of the general law that where a man has an election or option to enter into an estate vested in another, or to deprive another of some existing right, before the party having the option acts he must elect once for all whether he will do the act or not." See also, *Spreed* v. *Morgan,* 11 H. L. Cas., 615; Bigelow, Estoppel, 562, 568.

Whenever by law or contract a party has laid before him a variety of steps, the taking of one of which excludes the rest, he must choose between them. After his choice is made, and by words or acts expressed in a manner suited to the particular case, he can not reverse it. Having elected to take one step, he is held to have waived the others. Bishop, Contracts, par. 808.

Equity follows the law and the rule is enforced as one resting in manifest justice under the principle that one who seeks equity must do equity. One is not permitted to take a benefit under an instrument and then repudiate it. Bispham, Equity, par. 306; Perry, Trusts, 596; *Bryan* v. *Kennett,* 113 U. S., 179, 198 (5 Sup. Ct. Rep., 407; 28 L. Ed., 908).

Creed, by bringing suit in foreclosure against Brigel and wife upon the debt evidenced by the third note in question, and asking the court to decree the stock to be sequestered and sold in discharge of said debt, made his election in a

formal manner and brought himself literally within the terms of the maxim quoted. He is concluded by it effectually, because Mrs. Brigel's obligation is extinguished and merged in the decree and the security is no longer free, but is an inseparable incident of that decree and is vital to it. This, we apprehend, is the meaning of the action of the Supreme Court in dismissing Creed's suit for personal judgment after he had elected his remedy of foreclosure and prosecuted it to a final dcree, and of the language of the court in saying of Mrs. Brigel that, although she was not certified as surety in the foreclosure suit, yet that "the order for the sale of the stock and its application to the debt, * * * substantially secures to her the benefits of this provision of the statute." *Brigel* v. *Creed,* 65 Ohio St., 40, 46.

In a word, the question in issue here, so far as relates to Mrs. Brigel, is *res adjudicata* (Freeman, Judgments, par. 249).

For these reasons the judgment below, so far as Mrs. Brigel is concerned, must be reversed and the cause remanded for the entry of judgment in accordance with the views herein expressed, and it is so ordered.

[The case having been subsequently considered on motion for rehearing, the court announced the following.]

## Supplemental Opinion.

Supplementing the views expressed in the former opinion, it is to be noted, that, notwithstanding Mrs. Brigel was not certified as surety in the foreclosure decree in case No. 48607, yet she was in fact a surety by reason of the circumstances under which the debt was created—the joint liability of herself and husband being upon a note given exclusively for the husband's debt. *Smith* v. *Sheldon,* 35 Mich., 42 (24 Am. Rep., 529).

Creed, being the holder of the note, between whom and the principal debtor the consideration passed, is presumed to know that Mrs. Brigel signed as surety. *Cummins* v. *Little,* 45 Me., 183; *Ward* v. *Stout,* 32 Ill., 399.

But in this case there was actual knowledge of the fact on Creed's part because these notes were given in renewal of, and substitution for, an earlier note of Brigel's, and in compliance with Creed's demand for additional security. Unquestionably, therefore, Creed was bound to recognize Mrs. Brigel's right as surety; and, while it is true that mere passive delay on his part to enforce the debt against the principal would not release the surety, yet the rule is well settled, that, if the creditor, having taken the property of the principal debtor by legal process or otherwise into his control with respect to the debt, voluntarily releases it or gives it up, the surety is thereby discharged. *Downer* v. *Bank,* Wright, 477; *Dixon* v. *Ewing,* 3 Ohio, 282 (17 Am. Rep., 591); *Findlay* v. *Bank,* 10 Ohio, 59; *Farmers Bank* v. *Raynolds,* 13 Ohio, 84, 85; *Dye* v. *Dye,* 21 Ohio St., 86.

In *Day* v. *Ramey,* 40 Ohio St., 446, 449, the rule is very clearly stated as follows:

"If the creditor has the means of satisfaction in his hands, and chooses not to retain them, he can not complain. The rights of sureties are largely creations of equity, and courts of chancery will not hold them liable, where the risk is increased by the act of the party for whose benefit the suretyship is intended to inure; and, if by the act of the creditor, the surety is injured or exposed to injury, that act may be laid hold of for the surety's relief." (Citing authorities.)

The right of release, it may be observed, does not depend on any contract with the creditor, but upon its being inequitable in him to knowingly prejudice the rights of the surety against the principal. *Pooley* v. *Harradine,* 7 Ell. & Bl., 431.

Creed, having possession of the stock from Brigel, with power of sale, appropriated it to the particular note in question and obtained a decree ordering it to be sold in satisfaction of a finding and judgment upon said note against Mr. and Mrs. Brigel. Subsequently, he permitted the stock to be sold in another suit to which he was a party; and now, in the present suit, he obtains a judgment against

Mr. Brigel, upon other notes with which Mrs. Brigel has no connection, and an order distributing the proceeds to himself in satisfaction of said judgment, thereby affirming the sale and application of proceeds.

These proceedings constituted an abandonment of his right or lien against the stock, so far as the foreclosure suit is concerned, which inures in favor of Mrs. Brigel *pro tanto,* to the extent of the full value of the security thus released. As the sale of the stock, made at less than one-third of its par value, produced considerably more than the face of the finding and judgment rendered upon the note on which Mrs. Brigel was surety, it seems probable that, upon final adjustment, it will be found to completely satisfy and discharge the judgment *in toto.* In drafting the judgment entry, therefore, the suggestion of the court in *Dixon v. Ewing, supra,* will be followed, and provision inserted enjoining any proceedings to enforce the judgment in cause No. 48607, pending the disposition of the stock or other determination of its value as a measure of credit or satisfaction in favor of Mrs. Brigel in relation to the judgment in said cause No. 48607.

*W. B. Stier,* for plaintiff.

*Maxwell & Ramsey* and *Kittredge & Wilby,* for defendant.